Cornelius DRESSEL, Plaintiff,

v.

David MATHEWS, Secretary of Health, Education, and Welfare, Defendant.

No. 76–632C (A).

United States District Court, E. D. Missouri, E. D.

Jan. 12, 1977.

R. J. Slater, St. Louis, Mo., for plaintiff.

Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

HARPER, Senior District Judge.

This action is brought by the plaintiff Cornelius Dressel under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the defendant, David Mathews, Secretary of Health, Education, and Welfare. The parties have filed cross-motions for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. The Secretary has filed a copy of the administrative record and a memorandum of law. Plaintiff ·has filed a memorandum of law contesting the decision of the Secretary.

On July 27, 1973 plaintiff filed an application to establish a period of disability under 42 U.S.C. § 416(i) and to obtain disability insurance benefits under 42 U.S.C. § 423. In that application he alleged that he became disabled due to pulmonary emphysema and congestive heart failure and that he became unable to work because of his disability on March 16, 1973. The application was denied after initial consideration and after reconsideration.

On August 5, 1975 an evidentiary hearing was held before an administrative law judge on plaintiff's application. At this hearing plaintiff, who was represented by counsel, offered evidence of impairments in addition to those alleged in the application. On August 29, 1975 the administrative law judge denied the application for benefits.

The Appeals Council of the Social Security Administration on May 14, 1976 affirmed the decision of the administrative law judge after considering further evidence of disability. Thereafter this judicial action was timely commenced.

Judicial review of this administrative final decision is limited to whether or not it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Easttam v. Secretary*, 364 F.2d 509 (8th Cir. 1966). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Timmerman v. Weinberger*, 510 F.2d 439 (8th Cir. 1975).

In his decision the administrative law judge made the following specific findings:

1. Claimant met the special earnings requirements on March 16, 1973, claimant's alleged onset date, and continues to meet the requirement through the date of this decision.

2. Claimant's principle occupation was that of warehouseman and line dispatcher.

3. Claimant suffers from pulmonary fibrosis both lower lung fields, left axis deviation on electrocardiogram, chronic bronchitis by history, possible element of angina pectoris, chronic anxiety reaction, history of cirrhosis of the liver and shortness of breath and nervousness.

4. Claimant's combined physical and mental impairments were not so severe as to have prevented sedentary work on or prior to March 16, 1973, and through the date of this decision.

5. Claimant was capable and is capable of performing substantial gainful activity on or prior to March 16, 1973, and through the date of this decision.

6. Claimant was not under a "disability" as that term is defined in the Act for a continuous period of 12 months or more on or prior to March 16, 1973, and through the date of this decision.

(Tr. 30). The issue presented by this action is whether the finding of no disability is supported by substantial evidence. "Disability", as used in the Act, means

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). A person is under a disability

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The term "impairment" is defined by the Act as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

■ Ordinarily, when "a claimant demonstrates that his impairment is so severe as to preclude him from performing his former work, the burden shifts to the Secretary to prove that there is some other kind of substantial gainful employment which the claimant could perform." *Timmerman, supra*, at 443. *See also* Annot., 22 A.L.R.3d 440, 445 (1968). Since the administrative law judge found that plaintiff suffers from substantial impairments, he based his finding of no disability upon his conclu-

sion that plaintiff can perform sedentary work which is available.

■■ Initially plaintiff takes issue with the statement of the administrative law judge that the existence of disability is to be determined "regardless of whether such work [that plaintiff can perform] exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work" (Tr. 23). This proposition is, of course, a direct quotation from the Act, 42 U.S.C. § 423(d)(2)(A). *See* p. 3, *supra*. To disregard this statutory admonition is to commit error. *Gentile v. Finch*, 423 F.2d 244 (3rd Cir. 1970). In determining a claimant's ability to engage in any substantial gainful activity, the appropriate test "is whether a particular job is realistically within the physical and mental capabilities of the claimant." *Timmerman, supra*, at 442.

■ Plaintiff was born on September 8, 1921 in St. Louis, Missouri where he now resides. His formal education extended to the eighth grade; he has received no formal vocational training (Tr. 49–50).

Between 1942 and 1945 plaintiff served in the United States Army, being assigned to supply duties. He was required to load and unload trucks, and to stack and store supplies in warehouses. In November, 1945 he was discharged. He was in good condition at the time of his discharge but he could not find work until 1946 when he became employed as a laborer by Aluminum Metals in East St. Louis, Illinois (Tr. 51). He performed this work for six months, until he re-enlisted in the Army because of a lack of better civilian employment opportunities. While in the service he was a battalion clerk and a supply clerk. In July, 1948 he received an emergency discharge when his wife became seriously ill (Tr. 52).

After his return to civilian life he was employed by Shepley Hardware for three years, performing shipping and warehouse duties. In 1952 he was employed by Glittons Manufacturing Company, working in the warehouse (Tr. 53).

In 1953 he became employed by Pacific Intermountain Express, his last employer. He worked there as a dockhand and later as a freight handler. Among his duties was the operation of a fork lift truck. He was promoted to the position of dock foreman (Tr. 54–55). As a foreman he often worked 10 to 12 hours a day and 6 or 7 days a week. (Tr. 55).

While employed by Pacific Intermountain Express, plaintiff also worked as a line dispatcher. He coordinated and assigned jobs for as many as 52 truck drivers. He maintained employment records which reflected these assignments (Tr. 75–77).

Plaintiff testified before the administrative law judge that he began suffering a shortness of breath and blackouts at work. Consequently he was not able to perform his job satisfactorily (Tr. 57–59). He stated that he has not suffered blackouts since 1973, however (Tr. 79). He takes six medications, four of them daily (Tr. 63).

Plaintiff testified he usually stays inside now. However, he occasionally walks two or three blocks to increase his strength (Tr. 65, 80). Occasionally he drives. He does not do household chores (Tr. 66). He is able to climb steps, although it tires him and he suffers shortness of breath (Tr. 82). He experiences cramps in his legs and feet, but he has medication for this (Tr. 67).

He testified that he took substantial sick leave from his employment in 1969, 1970, 1971, and 1973 until he terminated his employment on July 26, 1973 (Tr. 56–58).

From May 29 to June 12, 1971 plaintiff was hospitalized for pulmonary fibrosis and arthritis of the spine (Tr. 169). Dr. J.F. Pifer, D.O., reported in his final summary as follows:

Pulmonary function tests showed low satisfactory study. His chest x-ray showed essentially normal on visualization. The lumbosacral spine x-ray showed some assymmetry of the facet structure in the lower lumbar region. Electrocardiogram was normal as was his Masters two step. He had more pain from the backache from the Masters two step than he did from the EKG.

Plaintiff's prognosis was described as "fair" (Tr. 170).

On November 10, 1971 plaintiff was hospitalized for evaluation for chest pain complaints. He was discharged on November 20, 1971. The discharge summary report indicated a final diagnosis of pulmonary fibrosis with emphysematous blebs, and a secondary diagnosis of arthritis of the left thorasic spine and subacute mild bronchitis. During the course of the hospitalization plaintiff became dyspneic on ambulation. (Tr. 168).

Plaintiff was again hospitalized between April 3 and April 20, 1973 for a chronic upper respiratory infection that had been present for three weeks despite medication. The final diagnosis was pulmonary fibrosis, congestive heart failure, and spastic colitis (Tr. 177).

On September 11, 1973 plaintiff was examined by Dr. Harold Joseph, M.D., at the request of the Social Security Administration. After a thorough medical examination, Dr. Joseph reported the following diagnosis: (1) anxiety state and hyperventilation syndrome; (2) slight chronic obstructive and restrictive disease of the lungs; (3) prostatic nodule, carcinoma to be excluded; and (4) history of cirrhosis of the liver. He further stated:

This patient has some symptoms of anxiety with hyperventilation syndrome which on the basis of this examination is the only thing sufficient to produce the degree of dyspnea which he describes. At least two episodes were clearly unrelated to exertion; however, he does complain of dyspnea with exertion but has on this examination evidence of lung disease insufficient to produce the degree of dyspnea about which he complains although there is slight degree of obstructive and restrictive disease of the lungs demonstrated. There is also an absence of evidence of coronary artery disease to account for his symptoms. Since his anxiety state seems to be intense enough to preclude his engaging in his usual occupation, it is likely that Mr. Dressel in addi-

tion has a depressive reaction the symptoms of which were not elicited on this examination. I would therefore recommend that he have a psychiatric evaluation to better determine a definitive diagnosis of his psychiatric illness and his prognosis since his psychiatric illness is the only limiting factor in my opinion that precludes his engaging in his usual occupation.

\* \* \* \* \* \*

There is no evidence on this examination of cirrhosis of the liver even though he has a history of it; therefore, his liver disease if present is well compensated and not contributing to his disability. In summary then, there has not been demonstrated on this examination evidence of sufficient cardio-pulmonary disease to account for the symptoms about which Mr. Dressel complains; that his symptoms are primarily on the basis of anxiety reaction and hyperventilation syndrome; and that he probably has underlying depressive reaction which should have further evaluation to determine a more precise diagnosis and prognosis. If his anxiety state and depressive reaction become less intense so that he could return to his usual occupation, there is no other organic cause to preclude his doing so on the basis of this examination.

(Tr. 200–210).

On October 11, 1973 plaintiff was examined by Dr. Joseph S. Shuman, M.D., a psychiatrist. On October 19, 1973 Dr. Shuman reported that plaintiff exhibited an average range of intelligence after simple I.Q. testing. Dr. Shuman diagnosed a chronic anxiety reaction with guarded prognosis. He further stated that

[t]he spells that Mr. Dressel describes certainly sound like hyperventilation. These would be found in a person who becomes occasionally very anxious so that he can be diagnosed as suffering from a Chronic Anxiety Reaction. I could find no evidence of any kind of depression. Certainly there were probably things going on at the time the symptoms started, which the patient has either forgotten or has not

related, even after being asked. I don't know whether the cause is at home or at work. Apparently his own doctor is convinced as to the physical basis of his illness and he has not treated him with any kind of psychotropic medication.

(Tr. 207).

On December 5, 1973 plaintiff was examined by Dr. David A. Gardner, D.O., who found "inspiratory and expiratory crepitant—dry basal rales. No moist rales. Normal heart sound." He concluded that plaintiff showed no evidence of ischemic heart disease, that plaintiff's dyspnea was only moderate, and that his lame leg (shorter) was his greatest problem. He also found bronchitis and chronic emphysema. (Tr. 164).

Plaintiff testified, without supporting medical records, that he was hospitalized on February 7, 1974 and diagnosed as having chronic bronchitis and chronic degenerative liver disease (Tr. 61–62).

In response to written questions posed by a private insurance company, Dr. Herbert C. Sweet, M.D., on June 7, 1974 stated as follows:

1. I believe Mr. Dressel will have difficulty performing the duties of his job as dispatch supervisor and it may be that he will have to [do] these duties more slowly than other individuals. This patient gets short of breath walking and climbing stairs, etc. I do not believe he will get any better in so far as his breathing is concerned at any time in the future. And in my opinion he is disabled for doing the work and of the dispatch supervisor and I do not believe that he will be able to return to this.

2. I believe Mr. Dressel could perform the duties of a sedentary occupation where he did not have irritant dust or gasses in the air which would impair his breathing.

3. Mr. Dressel is able to walk on the level slowly for an indefinite distance but will be unable to hurry and will have difficulty going uphill. He can

climb one flight of stairs but is unable to climb 2 flights of stairs without stopping. Patient also develops pain in the chest on exercise and may have an element of angina.

4. I believe this man's life expectancy would be fairly normal; that is if normal expectancy would be to age 67 or there about. But I do not believe that he can be expected to increase his breathing or his exercise tolerance.

(Tr. 209).

Plaintiff was hospitalized on December 12, 1974 upon his complaint of diabetes. He remained there through December 24, 1974 with a final diagnosis of chronic degeneration of the liver, chronic bronchitis, hyperventilation syndrome and antral gastritis. No diabetes was reported on physical examination (Tr. 223–224). He was discharged in satisfactory condition.

On April 21, 1975 Dr. T. J. Fitzgerald, Ph.D., a psychologist, reported to plaintiff's attorney the results of his examination of plaintiff. After considering plaintiff's work history, mental state, medical condition, educational background, and the local employment market, he opined that plaintiff "cannot compete on the open and competitive labor market" (Tr. 236). Also supporting this opinion were the results of a battery of psychological tests administered by him to plaintiff. It was his ultimate impression that plaintiff "is regressing to a more immature level of adjustment and [is] becoming dependent on an environment of which he is fearful and suspicious" (Tr. 240).

Dr. Fitzgerald testified before the administrative law judge that plaintiff could not be hired, that his communicative skills were poor—a result of his anxiety (Tr. 105–108).

During the hearing the administrative law judge posed certain hypothetical questions to the vocational expert, Dr. Arthur E. Smith, regarding plaintiff's ability to perform substantial gainful activity (Tr. 88). Given plaintiff's physical impairments, his age, and his work experience, Dr. Smith opined that plaintiff could not perform any of the jobs he had in the past (Tr. 90). Then the administrative law judge assumed that plaintiff could perform sedentary work without there being irritant dust or gasses in the air and asked Dr. Smith if there exists any job that plaintiff could perform. Dr. Smith answered:

A. Given that same set of hypothetical situations, in view of the kinds of transferrable skills, the work he has done previously he would necessarily had to demonstrate adequate verbal communication, eye-hand coordination, gross-manual dexterity, a certain amount of clerical skill with respect to recording and paying attention to details. He would have had to have demonstrated some supervisory skills in order to function as he did. And I would infer that a degree of information and knowledge about the geographic area, as far as what went into previous work that he has done in part. Given that set of transferrable skills and given the circumstances which you have set out, in my opinion, there are some dispatch-type jobs in the area in which one may function in an air-conditioned office, in a seated position. And basically requires the kinds of skills previously demonstrated, such as taxi-dispatcher. There are a variety of other kinds of dispatch-type jobs, some 920 roughly in this area. Some of which fit into that situation, some of which do not. But the taxi-dispatcher by and large does. There are approximately 50 such jobs in the St. Louis—

Again, on the same set of assumptions, a night clerk would be within the range of capacity, capacities, as indicated within that set of circumstances. And again, making the assumption that on the basis of those kinds of skills which necessarily had to be demonstrated previously and assuming that they are transferrable—because nothing in the hypothetical indicates any deterioration of

those skills—he would be able to function in that type position as well.

Q. [administrative law judge] You speak of night clerk.

A. Night clerk, hotel, motel—

Q. Okay.

A. Small, which is one of those kinds of positions which still continues to be cited by the Division of Employment Security as a hard-to-fill job albeit not a high-paid job.

Q. Anything else?

A. Within the same set of circumstances, and again assuming the type of communication skills, a telephone solicitor's job of which there are an abundance in the area, which is basically sedentary. Again, basically allows for working in a relatively pure environment, would be impossible.

(Tr. 90–92).

█ The Appeals Council of the Social Security Administration received in evidence a report of Dr. Louis J. Biscotti on a private insurance company form indicating an opinion that plaintiff is permanently disabled (Tr. 248). However, no medical data supports this report. Its persuasive character is thereby diminished. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973), *cert. denied*, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973); *Russell v. Secretary*, 402 F.Supp. 613, 619 (E.D.Mo.1975).

█ The administrative law judge considered plaintiff's age, health and medical history, education, and work experience and determined that he was not disabled under the Act, and that he could perform sedentary work. This finding is supported by substantial evidence which includes plaintiff's testimony regarding his abilities to walk, climb stairs and drive an automobile; and by Dr. Sweet's conclusion that plaintiff could do sedentary work, if there were no breathing irritants in the air. *Cf., Keller v. Matthews*, 543 F.2d 624 (8th Cir., filed October 26, 1976). A conflict between the opinions of experts is for the administrative law judge to resolve. *Timmerman, supra*, at 444. Finally, the determination is supported by the testimony of the vocational expert regarding the availability of sedentary jobs which plaintiff could perform.

For the reasons set out above, the Court finds substantial evidence to support the Secretary's decision that plaintiff is not disabled within the meaning of the Social Security Act.

Accordingly, the plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is sustained.

The Clerk of the Court is directed to prepare and enter the proper order to that effect.