Coleta WILLIAMSON, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary,
Health, Education and Welfare,
Defendant.

No. 76–0014–CV–W–5.

United States District Court,
W. D. Missouri, W. D.

Feb. 5, 1980.

Regina Bass, Legal Aid Society, Kansas City, Mo., for plaintiff.

Eugene Harrison, Asst. U. S. Atty., Paul P. Cacioppo, Regional Director, H.E.W., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

Plaintiff brought this action under the provisions of 42 U.S.C. § 405(g) seeking judicial review of the defendant's final decision denying her social security disability benefits. The defendant has moved the Court for summary judgment, and the plaintiff has filed a brief in support of her claim. For the reasons stated below, the defendant's motion for summary judgment is sustained, and the decision of the defendant to deny the plaintiff social security disability benefits is affirmed.

Claimant's application for social security disability benefits was rejected by the Administration on July 25, 1974, and again upon reconsideration on October 4, 1974. A hearing was held before Richard L. Jandt, Administrative Law Judge. Judge Jandt issued an opinion in which he found that claimant was not entitled to a period of disability or disability benefits. Claimant then filed a Request for Review of the Hearing Decision Order, and the Appeals Council accepted Judge Jandt's decision as the final decision of the Secretary. On January 9, 1976, this action was was filed, and the Honorable William R. Collinson granted plaintiff's motion for remand and remanded the case to the Appeals Council. The Appeals Council ordered the matter remanded to an Administrative Law Judge for a supplemental hearing which was held June 14, 1977 before Robert Pine, A.L.J.

On August 22, 1977, Judge Pine found that claimant was not entitled to a period of disability or to disability benefits. The Appeals Council affirmed that decision. Plaintiff seeks judicial review of the Appeals Council's decision and believes it should be reversed by the Court.

■ The form and scope of judicial review of the defendant's actions is statutorily defined and limited. Under 42 U.S.C. § 405(g), the Secretary's decision is conclusive upon the Court if it is supported by substantial evidence. *Alexander v. Weinberger*, 536 F.2d 779 (8th Cir. 1976); *Yawitz v. Weinberger*, 498 F.2d 956, 957 (8th Cir. 1974). This standard of substantial evidence is defined as such relevant evidence as a reasonable mind might accept an adequate to support a conclusion. *Russell v. Secretary of HEW*, 540 F.2d 353, 356 (8th Cir. 1976); *Brinker v. Weinberger*, 522 F.2d 13, 17 (8th Cir. 1975).

■ The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). In order to meet the statutory definition, the claimant must show (1) that he has a medically determinable physical or mental impairment that will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is a result of his impairment. *Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975).

■ Once the claimant establishes that his impairment is so severe that he cannot engage in his former occupation, the burden shifts to the Secretary to prove that the claimant can perform some other kind of substantial gainful employment. *Johnson v. Califano*, 572 F.2d 186, 187 (8th Cir. 1978).

After hearing the plaintiff's testimony and evidence, the Administrative Law Judge (ALJ) determined that plaintiff had met her initial burden of demonstrating an impairment that precluded her from returning to her former occupation. However, the ALJ found that the claimant is physically capable of sedentary work activity and that she has skills transferable to sedentary forms of work. The ALJ concluded that the evidence failed to establish that the claimant's impairments have been of sufficient severity as to prevent her from engaging in other substantial gainful activity and, therefore, plaintiff is not "disabled"

as defined by the Act. The Court must determine whether this decision is supported by substantial evidence. After reviewing of the record, the Court concludes that the adverse decision of the Secretary is supported by substantial evidence based upon the following determinants.

Coleta Williamson was a 57-year-old widow at the time of the supplemental hearing held June 14, 1977. She lived alone in a five-room, second-story apartment. She completed the fifth grade and began the sixth grade.

Mrs. Williamson testified that the onset date of her disability was October 2, 1973. From 1968 to that time, she had been employed as a floor girl in a garment factory where her duties were to carry unfinished coats and other garments to the sewing machines. She claims to have left this employment because of her alleged disability. Her most recent work activity was from December 1973 to February 1974. For this short period of time, she worked in the home of Dr. Driskoll as a housekeeper. She testified that she left this employment because she "wasn't able to work." (Tr. 148) Plaintiff's work history also includes work as a waitress and a pastry cook.

Plaintiff complained of pain caused by arthritis in her legs, hips, back, and neck. She testified that she has severe headaches, high blood pressure and dizzy spells. She believed that she has a brain tumor that originated in the front of her head and which was later knocked to the back of her head. She further testified that she cannot walk very far nor sit very long because her feet go to sleep. She also complained that she experiences swelling and numbness in both her hands and feet and that she must run hot water over her hands in the morning. She testified that she hurts all of the time. At the time of the hearing, she was on several medications, and she was receiving heat therapy for her back and legs. Plaintiff admitted that her high blood pressure was controlled by her medication.

In 1975, plaintiff was hospitalized for a period of two weeks in the Martin Luther King, Jr. Memorial Hospital under the care of Dr. John H. Wells. During her stay, an extensive number of clinical and diagnostic studies were performed. All of the tests except three were interpreted as "normal". X-rays of the cervical spine were interpreted to show "[m]inimal degenerative change of cervical spine". An electroencephalogram was interpreted as an "[a]bnormal EEG with focal spikes from left fronto-temporal area." Dr. Wells suggested a complete neurological work-up. A clinical test called an SMA/12 showed "[m]arkedly elevated blood sugar."

Dr. Wells interpreted her hospital stay as being normal, and his final diagnosis was "[o]rganic brain syndrome; epilepsy (idiopathic); osteoarthritis of cervical spine; cervical neuralgia; temporal lobe convulsive disorder; anxiety reaction, secondary to above; diabetes mellitus; irritable bowel syndrome." Dr. Wells concluded that she was unable to work. (Tr. 184–85)

In March, 1977, Dr. Wells added the diagnoses of severe cerebral insufficiency, peripheral vascular insufficiency, severe migraine-type headaches and "[a] severe anxiety reaction as a result of being sick." He qualified his diagnoses by suggesting that the claimant be evaluated by a good internist and a neurosurgeon. (Tr. 202)

In April, 1977, claimant was examined by Dr. Bernard M. Abrams, a board-certified specialist in psychiatry and neurology. Dr. Abrams' findings were contrary to the findings of Dr. Wells. The clinical and diagnostic tests Dr. Abrams performed during a physical examination of plaintiff were interpreted as "normal". Her EEG was interpreted as "normal". Dr. Abrams assessed that she could sit for 8 hours, could frequently lift or carry up to 20 pounds, could occasionally lift or carry up to 50 pounds, could use both hands in repetitive actions of simple grasping, pushing, pulling and fine manipulating, could use either or both feet in repetitive movements operating foot controls, could frequently reach above shoulder-level and could occasionally bend, squat or crawl. Dr. Abrams concluded:

"This patient has a history of dizzy spells which would preclude her working in

high places or near dangerous machinery. She does not have a seizure disorder, by either description or EEG. Her headaches are difficult to delineate exactly, but they seem like constant tension headaches associated with depression. I find no evidence that she has cerebral insufficiency, severe, mild or moderate and certainly no evidence she has temporal lobe epilepsy. She does have a derangement in her right hip which needs orthopedic elucidation and which would preclude her from walking any great distance or from standing for a long period of time." (Tr. 204)

Plaintiff was examined in May, 1977 by Dr. Frank H. Ise, a board-certified orthopedic surgeon. He reported that the plaintiff was a well-developed, well-nourished individual who moved about the examining room without demonstrable difficulty. He observed that she was able to climb on and off the examining table without apparent pain. An examination of her back revealed that her pelvis was level, there was no list or scoliosis, there was no spasm or tenderness, and that she had a full range of motion of the lumbosacral spine with complaints of pain on maximum flexion only. A neurological examination of the lower extremities revealed that heel and toe gait was normal, straight-leg raising was negative and peripheral sensation and pulses were normal. X-rays of the lumbosacral spine showed only that there was "some very minimal arthritic spurring noted at the level of the 3 lowest vertebra." Dr. Ise concluded:

"It's the feeling of this examiner that Mrs. Williamson is probably having some real pain in her lower back which would be aggravated by any work requiring prolonged bending, stooping or lifting. On the other [h]and I see no reason why she could not do some form of relatively sedentary work consistent with her past training and level of education without an undue amount of pain." (Tr. 209)

Dr. Paul T. Correll, a vocational expert, testified at the hearing and responded to essentially five hypothetical questions. The first hypothetical question was posed by the ALJ and was consistent with Dr. Abrams' and Dr. Ise's medical opinion and assessment of the plaintiff's physical capabilities. (Tr. 173) Dr. Correll testified that under this hypothetical question the plaintiff would possess sedentary-level transferable skills resulting from previous work experience. He listed several jobs the plaintiff could perform and also stated that these jobs existed in significant numbers in the area and region where the plaintiff resides.

The ALJ supplemented this hypothetical question with the factors of severe headaches, dizzy spells, and the degree of pain plaintiff claims to experience. Dr. Correll testified that plaintiff would be unemployable to the extent these factors interfered with her ability to report to work regularly. (Tr. 176)

The ALJ further hypothesized that the plaintiff could not sit for long periods of time because her feet and legs fell asleep and became numb. Dr. Correll testified that all but one of the jobs he listed previously could be performed in either a standing or sitting position. (Tr. 177)

The fourth and fifth hypothetical questions were posed by Mr. Kite, plaintiff's attorney. Mr. Kite hypothesized that plaintiff could neither sit nor stand for any period of time. Dr. Correll testified that he thought she would be unemployable under these circumstances. (Tr. 178) Mr. Kite further hypothesized that plaintiff's hands were stiff at times in the morning to the extent she had to run hot water over them. He asked Dr. Correll what effect this would have on plaintiff's employability. Dr. Correll answered that she would have difficulty performing the previously mentioned jobs depending upon the degree of stiffness. (Tr. 179)

■ The ALJ made the following findings:

"2. The preponderance of the medical evidence fails to establish the existence of severe cerebral insufficiency, organic brain syndrome, temporal lobe convulsive disorder, idiopathic epilepsy or peripheral vascular insufficiency.

3. The medical impairments established as existing consist of minimal osteoarthritis of the spine, an anxiety reaction and essential hypertension.

4. The claimant's osteoarthritis, while causing some discomfort, does not cause the severe pain and stiffness that the claimant alleges she experiences.

5. The claimant's anxiety reaction is not severe and would not preclude work activity.

6. The claimant's essential hypertension is controlled by medication.

7. The claimant's allegation of numbness of the extremities, severe pain and stiffness of the joints of the body, severe muscular pain all over her body, blackout spells, severe pain of the lower back and legs, and the inability to sit or stand for significant periods of time are not credible.

8. The claimant's symptoms are disproportionate to the nature of the disease entities present and are exaggerated by the claimant.

9. While the claimant may be unable to perform her usual work, she is physically and vocationally capable of performing sedentary work.

10. The sedentary jobs which the claimant is capable of performing consist of patcher of electrical equipment, egg processor in the drug industry, cleaner in the electronics industry, handle maker in the leather and plastics industries and lens cementer in the optical goods industry.

11. The jobs shown in the preceding finding exist in significant numbers in the geographical region where the claimant resides.

12. On and prior to the date of this decision the claimant was not under a "disability" as defined in Title II of the Social Security Act." (Tr. 133)

It is the opinion of this Court that these findings are supported by substantial evidence.

Plaintiff argues that the ALJ failed to consider the effect of all of her impairments as a whole and that he failed to take a practical view of the plaintiff's ability to perform those jobs listed by the vocational expert.

■ Plaintiff's argument that the ALJ failed to consider the combined effect of her ailments is totally without merit. In his evaluation of the evidence, the ALJ concluded

"that the clinical and diagnostic studies confirm the presence of the following disease entities: minimal osteoarthritis (or degenerative arthritis) of the spine as confirmed by x-rays and diagnosis of Dr. Frank H. Ise and x-rays taken at the Martin Luther King, Jr. Memorial Hospital, an anxiety reaction based on misconceptions of her medical status as pointed out by Dr. Abrams, a specialist in psychiatry and neurology, and mild hypertension which appears to be controlled by medication. Beyond these disease entities the evidence fails to establish the presence of the many other disease entities which have been diagnosed. What then can the claimant do *considering the combined effect of these impairments*? . . . The osteoarthritis that the claimant has at its very worst would cause mild discomfort rather than severe pain. Her anxiety should be ameliorated by. assurance that she does not have a tumor or other serious disease entity. Her hypertension is controlled by medication. The Administrative Law Judge concludes that the claimant has the physical capabilities of performing sedentary work activity." (emphasis added) (Tr. 132–33)

Unquestionably, the ALJ considered the combined effect of the impairments he found to be credible. He could not be expected to consider the impairments and complaints that he found were not credible.

■ Most of her complaints were simply not supported by objective medical evidence, even though the medical evidence was conflicting. Dr. Wells, plaintiff's treating physician, believed that plaintiff was disabled. (Tr. 196) However, medical opinion is not conclusive on the ultimate fact of

disability. *Russell v. Secretary of HEW*, 402 F.Supp. 613 (E.D.Mo.1975), *aff'd*, 540 F.2d 353 (8th Cir. 1976); *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971). Dr. Abrams and Dr. Ise reported findings contrary to the findings of Dr. Wells. A written report by a licensed physician who has examined the claimant may be received in evidence and, despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Secretary, and not the Court, is charged with the duty to weigh the evidence and resolve the conflicts in order to determine the case. *Richardson v. Perales, supra; Janka v. Secretary of HEW*, 589 F.2d 365 (8th Cir. 1978); *Timmerman v. Weinberger, supra; Easttam v. Secretary of HEW*, 364 F.2d 509 (8th Cir. 1966). The Secretary determined that the preponderance of the medical evidence supported the findings of Dr. Abrams and Dr. Ise. This Court finds that the Secretary's determination is supported by substantial medical evidence.

 Her complaints of pain, even though subjective, were also not supported by the evidence. It is true that pain, standing alone, may be sufficiently severe, prolonged and intractible to constitute a "disability" within the meaning of the Act. *Benson v. Matthews*, 554 F.2d 860 (8th Cir. 1977); *Murphy v. Gardner*, 379 F.2d 1, note 8 (8th Cir. 1967). But, "while pain is 'subjective,' clinical techniques may shed some light on the probability of its existence, magnitude, and disabling effects." *Miranda v. Secretary of HEW*, 514 F.2d 996, 1000 (1st Cir. 1975). Thus, the issue becomes one of credibility for the finder of fact. In his evaluation of the evidence, the ALJ stated that he observed the plaintiff during the course of her testimony at the hearing. In his opinion, she "appeared to be a person given to exaggerating her difficulties." (Tr. 131) He observed her facial appearance and her manner and demeanor during the hearing and concluded that they "were

not those of a person suffering from substantial pain all over her body." *Id.* The ALJ stated that he based his findings of credibility not only on his own observations, but also on an "amalgam of opinion which includes opinions of experienced medical observers." *Id.* According to his evaluation of the evidence, the ALJ did consider the combined effect of all plaintiff's impairments that he found were credible, and appropriately discounted those impairments that he found were not credible, including her subjective complaints of severe pain.

 Plaintiff also argues that the ALJ used "arm-chair" speculation in determining plaintiff's ability to perform those jobs listed by the vocational expert. However, the preponderance of the medical evidence established that plaintiff is physically capable of performing those jobs. Dr. Correll, the vocational expert testified that plaintiff's skills and work experience were transferable to the performance of these jobs.

 Congress amended the Social Security Act in 1967 to make it clear that a plaintiff is not disabled merely because she would not be hired for work applied for. *Miller v. Finch*, 430 F.2d 321 (8th Cir. 1970).

"While such factors as . . . whether [a claimant] would or would not actually be hired may be pertinent in relation to other forms of protection, they may not be used as a basis for finding an individual to be disabled under this definition. It is, and has been, the intent of the statute to provide a definition of disability which can be applied . . . without regard to . . . local hiring practices or employer preferences . . .." H.Rep.No.544, 90th Cong., 1st Sess. 30 (1967); S.Rep. No. 744, 90th Cong., 1st Sess. 49 (1967). U.S.Code Cong. & Admin.News, pp. 2834, 2882. *See also, Gentile v. Finch*, 423 F.2d 244 (3rd Cir. 1970).

The Eighth Circuit has stated that "[t]he relevant inquiry is not whether the claimant is able to obtain employment at some substantial activity that exists in the national economy but whether the claimant is able to engage in such activity." *Timmer-*

*man, supra* at 442, quoting *Torske v. Richardson,* 484 F.2d 59, 60 (9th Cir. 1973), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974).

■ The Secretary is not required to find if a specific job opening is available to this particular plaintiff. *Janka v. Secretary of HEW, supra; Russell v. Secretary of HEW, supra; Brinker v. Weinberger, supra; Timmerman v. Weinberger, supra; Torske v. Richardson, supra; Dressel v. Mathews,* 426 F.Supp. 286 (E.D.Mo.1977), *rev'd on other grounds,* 558 F.2d 504 (8th Cir. 1977); *Poore v. Mathews,* 419 F.Supp. 142 (D.Neb.1976).

For the reasons stated above, it is hereby

ORDERED that the motion of the defendant is granted and the decision is affirmed.