518

SCHWING et al. v. UNITED STATES.
WILLIAM H. WANAMAKER, Inc. v.
SAME.

Nos. 9190, 9252.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 24, 1947.

Decided Jan. 7, 1948.

Philip R. Miller, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen., A. F. Prescott, Sp. Asst. to the Atty. Gen., and Gerald A. Gleeson and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellant.

Raymond A. White, Jr., of Philadelphia, Pa., for appellee Schwing.

Edmund P. Hannum, of Philadelphia, Pa. (Thomas M. Hyndman, of Philadelphia, Pa., on the brief), for appellee Wanamaker.

Before BIGGS, and KALODNER, Circuit Judges, and McGRANERY, District Judge.

McGRANERY, District Judge.

The above two cases involve the same problem of statutory construction. In both, the taxpayers are suing to recover sums exacted by the Commissioner of Internal Revenue as employment taxes on employers under the applicable Acts. See Titles VIII and IX Social Security Act, 49 Stat. 636 and 639, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq., as repealed in part 53 Stat. 1, and Internal Revenue Code, chap. 9, subchaps. A and C, 26 U.S.C.A.Int.Rev. Code, §§ 1400 et seq., 1600 et seq. See also Treasury Regulation 90, promulgated under Title IX of the Social Security Act, art. 205. In No. 9252, William H. Wanamaker, Inc., a Delaware corporation, seeks to recover $686.79, plus interest thereon, paid for the years 1938 through 1941. In No. 9190, John Schwing and Son, a partnership doing business in Philadelphia, seeks refund of $559.66, plus interest, paid for the years 1938 through 1942. In both cases, the taxpayers made timely claims for refund with the Commissioner but were unsuccessful. Disallowance in both depended upon a determination that the tailors involved were employees of the taxpayer under the Social Security Act, rather than independent contractors. The District Court awarded judgment for the taxpayers in both cases and the government has appealed in each. While the facts in both cases are not identical, they are strongly similar.

Taxpayers are both engaged in the business of custom tailoring; William H. Wanamaker, Inc. is a retailer of men's clothing, and as a regular part of its business has a custom tailoring department. John Schwing and Son are solely custom tailors. The general method of doing business in custom tailoring during the years at issue was substantially the same for both taxpayers. When a suit of clothing was ordered by a customer, his measurements were taken and the cloth selected was cut according to the pattern of these measurements. The cut pieces of cloth, along with the linings and other necessary materials, known as trimmings, were separated into three bundles, containing the materials for the coat, vest and pants. These bundles were given to journeymen tailors, each one a specialist in his line of work, as a coatmaker, vestmaker, or pantsmaker. The tailors took the bundles to their places of work and there assembled them into a completed garment, by basting and sewing. The completed garments were returned to the taxpayers' establishments, where they were delivered to the customer, after some minor adjustments.

In both cases, the District Court made substantially similar findings of fact. In fact, in the Wanamaker case, the Court noted that the facts were not sufficiently different from the Schwing case to justify a different conclusion. In both cases, the Court found, inter alia, and in addition to what has already been noted, that: each tailor did his work at home or at his shop, and none at the taxpayer's place of business; each tailor furnished and owned his own equipment, including sewing machines, tables, irons, scissors and other items, the taxpayer owning none; the taxpayer did not pay the tailors' rent, light or heat; each tailor was paid on a piece-work basis, at a fixed rate for a completed garment, at the end of each week; the amount paid was compensation for the garments completed in that week; there was no guarantee of a minimum weekly wage, and the taxpayer was not required to furnish a specific amount of work to the tailor nor was the latter required to work solely for the taxpayer; some of the tailors did similar work under similar arrangements for other merchants.

The taxpayer furnished a ticket with each bundle containing specifications governing the work to be done and dealing with such items as the number of pockets, type of stitching, and the number of buttons. The taxpayer was interested only, according to the Court's findings in both cases, in obtaining a completed garment in accordance with these specifications, tailored and finished in a workmanlike manner, and it did not supervise or control the tailors, nor give them any mandatory directions as to the manner or means of attaining this result. If the work was defective and not in accordance with taxpayer's standards, the garment was altered by one of its employees working at its place of business. The Court below also found in both cases that the taxpayer had the right to instruct the tailors in a general manner as to any phase of their work so that defective work might be avoided. The taxpayer assumed the risk of defective work by the tailors and did not refer complaining customers to them for redress, nor did it deduct anything from their pay for defective work unless the material was damaged.

In determining whether the individual tailors were employees or not under these facts, it is clear that the District Court in both cases applied the restricted commonlaw definition of "employee" under which the findings that the taxpayers did not control the details and means by which a satisfactory garment was to be produced and the taxpayers did not supply equipment and a place to work were crucial. However, in the companion decisions of United States v. Silk and Harrison v. Greyvan Lines Inc., 331 U.S. 704, 67 S.Ct. 1463, 1468, the Supreme Court has recently indicated that the technical common law concepts are not necessarily controlling in cases of this sort and that " ' "the primary consideration in the determination of the applicability of the statutory definition is whether effectuation of the declared policy and purposes of the Act comprehend securing to the individual the rights guaranteed and protection afforded by the Act." ' " See United States v. Silk, supra, 331 U.S. 704, at page 713, 67 S.Ct. 1463, at page 1468. The Court further noted that

in applying the Social Security Act, therefore, a great many factors must be considered. "The Social Security Agency and the courts will find that degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision. No one is controlling nor is the list complete." See United States v. Silk, supra, 331 U.S. 704, at page 716, 67 S.Ct. 1463.

We must determine the intent of Congress in passing the Social Security Act. We are not aided in this by any specific item of legislative history. But by having in mind the classes of workers for whose benefit the Social Security program was enacted, Congressional intent, as it bears on the facts of the instant cases, becomes clearer. That is to say, the Act was aimed to protect those humble workers whose livelihood is dependent upon another rather than upon the public at large, and who are subject to unemployment disability and old-age insecurity, and the issue is whether these tailors are in that class. Putting the problem in the terms of the Silk decision, does an application of the factors there enumerated and suggested disclose these tailors to be small businessmen, unprotected by the Social Security program, or workingmen; i. e., employees, to be afforded its benefits, because they, "as a matter of economic reality are dependent upon the business to which they render service"? See Bartels v. Birmingham, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550.

In the case of William H. Wanamaker, Inc., none of the ten tailors whose status is disputed had worked for the company for less than four years, and most of them had worked for more than ten. From the evidence it appears that these tailors did not solicit the public at large for work. They did not advertise, did not list themselves in any business capacity in the telephone directory, did not have a business card and, with one short-lived exception, did not even disclose the nature of their work on the fronts of their homes or other working places. A few of them did work for one other merchant in addition to the taxpayer, under the same sort of regular

relationship. The work did not call for any unique skill in comparison to other tailors. The impression that these individual tailors were not individual businessmen is furthered by the evidence that 95 percent of the custom tailoring in Philadelphia is now done by workers who work on their employer's premises, and are admittedly not independent contractors. Angelo Orsatti, one of the tailors in this case, testified that he is now working full time at Jacob Reed's shop, that he is doing exactly the same work as he formerly did for Wanamaker's in his home, and gets the same instructions as he formerly did, with oral directions seldom given.

The piece rates set by taxpayer compelled work for long hours in order to make a living. Though it may be, as the District Court found, that taxpayer had only the right to instruct the tailors in a general manner as to their work, the exigencies of time and their economic situation made them as dependent upon taxpayer for a livelihood as any other employee. They had no opportunity for profit other than by the sale of their labor at the going rates, and in any given day, or week, their supply of that was limited by physical facts. They could offer no more. These tailors had few of the trappings of the entrepreneur, and, with one or two possible exceptions, not even the attitude. Even Nicholas DeGaetano, perhaps the closest case, who took in a little cleaning and dyeing and had a sign on his store for a few months saying so, did not regard himself as being in business for himself, but as working for taxpayer. Their work required no capital and their equipment, a sewing machine, an iron, shears, a table, was the sort usually found in a home and not worth much more than $30 or $40. It is significant that in the Schwing case, John Ianuzzi, a tailor who was conceded to be an independent contractor, had three employees, two sewing machines, did work for five concerns during the period under consideration and sublet part of the work to another woman. None of these ten tailors, from the evidence in the record, bore much resemblance to Ianuzzi. Looking at "the total situation" with the point of view suggested by the Silk case, the Court feels that these ten tailors were not independent businessmen, who must engage in the economic struggle for existence protected only by their ability, capital, and chance, but were employees of William H. Wanamaker, Inc., and subject to the protection that the Social Security Act may eventually afford them.

Although the facts in the Schwing case are different in some respects, the Court feels they do not justify a contrary conclusion. Only with Abraham Raskin, who made vests for two other custom tailors besides John Schwing and Son, and who sometimes employed a "finisher", is there enough dissimilarity to justify comment. And we feel that "the balance in close cases should be cast in favor of rather than against coverage, in order to fulfill the statute's broad and beneficent objects." See United States v. Silk, supra, 331 U.S. 704, at page 721, 67 S.Ct. 1463, 1472.

Accordingly, judgment for the taxpayer in each case will be reversed and the court below will be directed to enter judgment for the appellant in each case in accordance with this opinion.