Wanda WILLIAMS

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE.

No. CA 3–76–0688–C.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 1, 1978.

Steve Chapman, Irving, Tex., for plaintiff.

Kenneth J. Mighell, U.S. Atty., Stafford Hutchinson, Asst. U.S. Atty., John M. Stokes, Regional Atty., Carol J. Buehrens, Asst., Dept. of Health, Education & Welfare, Dallas, Tex., for defendant.

MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiff has filed this civil action under 42 U.S.C. § 405(g) asking the Court to re-

---

view an adverse decision of the Secretary of Health, Education and Welfare. The Secretary's decision denied Plaintiff benefits under the Federal Old-Age, Survivors, and Disability Insurance subchapter of the Social Security Act, 42 U.S.C. § 401 et seq.

The Court finds that Plaintiff did file her application for review within the applicable 60-day period after a final decision of the Secretary as required by 42 U.S.C. § 405(g) and therefore concludes that it has jurisdiction. .

An administrative law judge determined after a hearing that Plaintiff was not disabled as set out in 42 U.S.C. § 423(d) on or before March 30, 1969, the last day of her eligibility for benefits under that law. That decision was affirmed by the Appeals Council constituted to hear such matters by the Secretary of Health, Education and Welfare and then appealed here.

■ Section 405(g) of 42 U.S.C. provides in part " . . . The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, . . . ." So the standard for review is whether or not there is substantial evidence to support the decision of the Secretary.[1]

■ The Court finds that there is not substantial evidence to support the decision of the Secretary and therefore concludes that he must be reversed.

There are only two medical opinions as to whether Plaintiff is disabled and the degree of any such disability. The record shows that a physician who was treating Plaintiff in 1967 told her to quit working. Another treating physician stated in 1975 that she had been totally disabled since 1974.

The record is not clear as to why the physician told Plaintiff to quit working in 1967. It is clear why Plaintiff was completely disabled in 1974. By then, she was suffering from acute coronary heart disease and had both a coronary bypass surgery and a saphenous vein bypass graft to alleviate her condition.

Mrs. Williams stated that she had had a heart attack in the late fifties. In January, 1967, she was hospitalized and various tests were conducted on her heart which were termed abnormal but not definite proof of heart disease. Plaintiff also stated at the hearing before the administrative law judge that she had had a problem of her feet swelling after a few hours of working as a sales lady in a drug store in 1967.

Plaintiff was also hospitalized in the spring of 1968 for gynecological problems, chronic cough from influenza and nausea and vomiting. The nausea and vomiting were symptoms of a migraine headache which was cleared up by the time that she left the hospital. At the administrative hearing, Plaintiff testified, and her husband confirmed, that she had had migraine headaches for many years, possibly as far back as when she was a teenager. They testified. that she had them frequently and when she did that they were either debilitating or severely so, sometimes to the point of inducing nausea and vomiting as in the instance of her hospitalization in 1968.

Each of the medical reports from her hospital admissions shows that Mrs. Williams was at those times extremely nervous. She was described as being extremely nervous or as having an anxiety reaction or as having vertigo. Even a cursory browse through the transcript of the hearing before the administrative law judge confirms her extreme nervous condition.

The sum of Mr. and Mrs. Williams' testimony is that the physician in 1967 who told her to quit work knew about her migraine headaches, her swelling feet, her extreme nervousness and her long history of medical disorders that by that time had included a partial hysterectomy, a salpingectomy, a complete hysterectomy, an adhesionectomy, and a heart attack. It appears that his telling her to quit working was supported by her physical and mental condition in 1967.

There is evidence that her condition was the same or worse by March 31, 1969, and

1. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842, 846 (1971).

no evidence to the contrary.[2] By then, she had developed a duodenal peptic ulcer and concrete evidence of an abnormal heart condition had developed and she was described by an admitting physician as having an anxiety reaction. Plaintiff when told to quit working in 1967 was only working part time as a saleslady and had been a cashier, which are light capacity occupations, so the only reasonable inference is that that physician found her to be totally disabled from working at that time. It would be unreasonable to infer that he found that she should have found an easier job for her as she was already doing light duty.

Plaintiff has carried her burden in that she has shown a medical opinion that she was fully disabled and the underlying basis for this opinion and the lack of any substantial evidence to the contrary. Therefore, the decision of the Secretary will be reversed and judgment rendered for the Plaintiff.

---

2. See *Mims v. Califano,* 581 F.2d 1211 (5th Cir. 1978); also *Kennedy v. Finch,* 321 F.Supp. 303 (N.D. Florida, 1970).