**John J. CUMMINGS, Plaintiff,**

**v.**

**Patricia R. HARRIS, Secretary of Health and Human Services, Defendant.**

**No. C–1–79–420.**

United States District Court, S. D. Ohio, W. D.

Nov. 3, 1980.

David J. Boyd, Cincinnati, Ohio, for plaintiff.

James C. Cissell, U. S. Atty., Cincinnati, Ohio, and Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant.

## OPINION

PORTER, Senior District Judge:

Plaintiff, a Social Security disability claimant, brought this action under 42 U.S.C. § 405(g), seeking review of the Secretary's decision finding that plaintiff is not disabled and denying Social Security benefits. The parties have filed cross-motions for summary judgment, supported by supplemental memoranda (docs. 4 and 5), thereby putting the action before this Court for general judicial review. 42 U.S.C. § 405(g). The issue confronting us is whether the Secretary's final decision denying plaintiff disability benefits is supported by substantial evidence.

The question before the ALJ was whether, while in an insured status, plaintiff was "disabled"—*i. e.*, unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1). Under the statute, a "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The standard which we must apply on review is whether there was "substantial evidence" to support the findings of the Secretary. 42 U.S.C. § 405(g). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla of evidence but less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Combs v. Gardner*, 382 F.2d 949 (6 Cir. 1967); *Miracle v. Celebrezze*, 351 F.2d 361 (6 Cir. 1965). The elements of proof to be weighed in determining whether there is substantial evidence to support the Secretary's determination are: (1) the objective medical facts; (2) the diagnosis and expert opinions of the treating and examining physicians on subsidiary questions of fact; (3) the subjective evidence of pain testified to by the plaintiff; and (4) the plaintiff's educational background, age and work history. *Blalock v. Richardson*, 483 F.2d 773 (4 Cir. 1972); *Miracle v. Celebrezze*, 351 F.2d 361 (6 Cir. 1965); *Van Fleet v. Weinberger*, 1 Unempl.Ins.Rep. (CCH) ¶ 12,429.27 (E.D. Mich. Sept. 30, 1974).

The burden of proof is on the plaintiff to show that he is disabled from engaging in his former employment. Once this occurs, the burden of going forward shifts to the

Secretary to demonstrate the existence of available employment compatible with the plaintiff's disability, while the burden of persuasion remains with the plaintiff to demonstrate that he cannot perform it. *Noe v. Weinberger*, 512 F.2d 588 (6th Cir. 1975); *Gray v. Finch*, 427 F.2d 336 (6th Cir. 1970).

Plaintiff applied for disability benefits on August 2, 1978, alleging that he became unable to work on March 6, 1978, at age 55 (tr. 54–57). The Social Security Administration denied plaintiff's application initially (tr. 60) and on reconsideration (tr. 64–65). An Administrative Law Judge (ALJ), before whom plaintiff and his attorney, appeared, considered the case *de novo*, and, on June 11, 1979, ruled that plaintiff was not disabled (tr. 5–12). The ALJ's decision became the final decision of the Secretary of Health, Education and Welfare when the Appeals Council approved it on July 13, 1979 (tr. 3).

Plaintiff is a fifty-seven-year-old man with a college education (tr. 29). He has worked as an accountant (tr. 29). Plaintiff alleges that he became disabled on March 6, 1978, at the age of 55, from heart disease, high blood pressure and hypertension (tr. 54). Plaintiff submitted several medical reports in connection with his claim for disability benefits. We will briefly review those reports.

Patient records from the Providence Hospital in Cincinnati, Ohio, show that plaintiff visited the hospital on June 22 and June 26, 1978, for a Holter monitor scan (tr. 91–94). Plaintiff's electrocardiogram was unremarkable except for minimal nonspecific S.T. segment changes (tr. 92). Dr. Michael Truman, one of plaintiff's treating physicians, reported on August 30, 1978, that he had treated plaintiff from March 2, 1976 through February 1, 1978 (tr. 95). Dr. Truman took four blood pressure readings during this period: 165/105 (March 2, 1976); 140/100 (March 23, 1976); 180/90 (April 20, 1976); and 230/130 (February 1, 1978). Dr. Truman diagnosed plaintiff's condition as hypertension (tr. 95). Dr. Truman referred plaintiff to Dr. Vlado Gracinin, of Cincinna-

ti, Ohio, for treatment of plaintiff's excessive blood pressure and chest pains. Dr. Gracinin, an internist, reported on September 30, 1978 that he treated plaintiff from February 2, 1978 through September 7, 1978 (tr. 96). Dr. Gracinin took three blood pressure readings during this period: 180/120 (February 2, 1978); 186/114 (March 8, 1978); and 162/102 (September 7, 1978) (tr. 96). Dr. Gracinin diagnosed plaintiff as having angina pectoris, hypertension, and substantial pain in his left arm and shoulder, necessitating treatment with Aldomet, Hygroton, Digoxin, and nitroglycerine pills, as well as rest (tr. 96, 97, 99).

Dr. Steven H. Grendel, a medical advisor for the Social Security Administration, reported on October 20, 1978 that plaintiff appeared to have chest pain, probably angina (tr. 98).

In response to a letter from the ALJ (tr. 104), Dr. Gracinin completed a physical capacities evaluation form on March 17, 1979 (tr. 106–105). On that form Dr. Gracinin noted that plaintiff could engage in sedentary work activity, however, in a letter accompanying that form Dr. Gracinin states that he did not think that the form was applicable to plaintiff's case (tr. 105, 106). In that letter Dr. Gracinin went on to state that plaintiff suffered from hypertensive arteriosclerotic heart disease with anginal syndrome and that the stress and strain of his profession in association with the emotional make-up had been a precipitating factor in his symptoms. In a letter to plaintiff's attorney dated May 3, 1979, Dr. Gracinin stated that plaintiff was "continually totally disabled since March 6, 1978 and was unable to engage in any substantial gainful activity for which he is qualified, based on his past education and experience" (tr. 112).

At the administrative hearing plaintiff testified that he is currently taking several medications: 6 Inderal tablets, 2 Aldomet pills, 1 Hygroton tablet, and 1 Digoxin tablet per day, as well as periodic nitroglycerine pills as needed (tr. 31). He testified that he experiences considerable dizziness, pain in his chest and left arm, fluttering of the heart, and shortness of breath (tr. 32).

■ The ALJ recognized that the plaintiff was unable to return to his former employment. At this point, the burden shifted to the Secretary to go forward with the evidence to show that plaintiff could engage in substantial gainful work in his physical condition and that there are jobs in the national economy he can perform. *Hephner v. Mathews*, 574 F.2d 359, 361–62 (6th Cir. 1978); *Garret v. Finch*, 436 F.2d 15, 18 (6th Cir. 1970); *Gray v. Finch*, 427 F.2d 336, 338 (6th Cir. 1970). In this case, the ALJ concluded that plaintiff could perform certain sedentary jobs.

■ In reaching his conclusion, the ALJ did not rely on the testimony of a vocational expert, indeed, no such testimony was offered, but rather looked to regulations recently promulgated by the Secretary. Those regulations, which are found at 20 C.F.R. Appendix 2, contain tables that indicate what findings should be made regarding disability given particular facts. From Table No. 1, which is to be used for claimants whose work capabilities are limited to sedentary work, the ALJ applied Rule 201.-08. This rule dictates that a claimant of "advanced age" whose education is that of a high school graduate or more and provides for direct entry into skilled work, and whose previous work experience is either skilled or semi-skilled but the skills are not transferable, is not disabled. Plaintiff in this case is 57 and thereof of "advanced age," *i. e.*, older than 55. *Id.* § 201.00(f). He is a college-educated accountant, so his education is that of a high school graduate or more and provides direct entry into skilled work. His previous work experience (accountant/comptroller) is certainly in skilled work, but an application of Rule 201.08 requires a finding that skills be non-transferable. This last requirement raises an issue in this case which is discussed below.

The introductory regulations for the tables state that the tables are to be used in instances where it is shown that the claimant cannot return to his/her past work. These regulations acknowledge that there must be a showing at that point that a job exists in the national economy for the claimant. They go on, however, to state that the "existence of such jobs is established" when the particular individual's vocational factors, *i. e.*, age, education, and work experience, coincide with the criteria of a rule in the table and that rule directs the conclusion that the individual is not disabled. *Id.* § 200.00. It is apparent that these tables are meant to preclude use of vocational expert testimony, and provide a conclusive presumption as to whether alternative work is available.

As a general matter, use of the tables can be viewed as conflicting with statutory requirements and Sixth Circuit precedents. 42 U.S.C. § 423(d)(2)(A) provides that a person is disabled when he can neither return to his former job nor, considering his age, education and work experience, engage in any other *"gainful work which exists in the national economy"* (emphasis added). Under the shifting burden of production rule in this Circuit, the emphasized language would seem to put the burden on the Secretary to show (a) that claimant could perform some job and (b) that job exists in the national economy. The tables stop short of this. Essentially they look at the claimant's age, education and work experience and determine whether or not the plaintiff can do something. They do not go the second step and determine whether that "something" amounts to a job in the national economy.

Sixth Circuit precedents appear to require that the Secretary provide specific evidence on the claimant's employability. Most notable is *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). In that case the ALJ found that claimant could not resume his former job but could do "light work" and therefore was not disabled. Judge Weick wrote:

"A finding of a capability to do light work does not constitute evidence that a person can engage in substantial gainful activity, nor is such a finding sufficient to rebut a prima facie case disability. A claimant's capacity to perform work must be evaluated in light of *his* age, *his* edu-

cation, *his* work experience, and *his* impairments, including *his* pain. This requires a finding of capacity to work which is expressed, not in terms of a vague catch-all phrase such as 'light' work, but in terms of specific types of jobs. [Citations omitted.]

574 F.2d at 362–363. The Court held that the Secretary's finding that the claimant was not disabled was not supported by substantial evidence and that the case should be remanded for further evidentiary development. The holding of *Hephner v. Mathews* was reiterated in *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980). These cases require that, when the burden of production shifts to the Secretary, the Secretary must come forward with evidence that a claimant can do a particular type of job and that job exists in the national economy. The tables in the regulations do not amount to this type of evidence.

Looking specifically at this case, the use of the sedentary work table was inappropriate for two reasons. First, the table does not have a category for plaintiff. As noted above, the rule applied by the ALJ required that the claimant's skills be nontransferable. Nevertheless, both in his discussion and in his findings the ALJ noted that plaintiff's skills were transferable. Thus, one of the requirements for application of Rule 201.08 was not met. The introductory regulations for the tables specifically require that "[w]here any one of the findings of fact does not coincide with the corresponding criterion of the rule, the rule does not apply in that particular case, and accordingly, does not direct a conclusion of disabled or not disabled." *Id.* § 200.00(a). This requirement, then, precludes application of Rule 201.08. Furthermore, none of the rules in the table apply to plaintiff's particular age, education, and work experience. Therefore the sedentary work table cannot be used in this case to direct a conclusion regarding disability. The ALJ actually recognized that all the criteria of Rule 201.08 were not met. He reasoned, apparently, that since someone with plaintiff's age and educational background who had nontransferable skills was not disabled

under the rule, then someone with transferable skills was certainly not disabled (tr. 11). This logic is appealing, but it nevertheless contravenes the specific dictates of the regulations.

The second reason for finding that use of the table was inappropriate in this case is that the context is inapplicable. The introductory regulations state,

[s]ince the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be wholly applicable where the nature of an individual's impairment does not result in such limitations, e. g., certain mental, sensory, or skin impairments. In addition, some impairments may result solely . . . environmental restrictions . . .

The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments.

*Id.* § 200.00(e). The findings of the ALJ in this case did not deal with plaintiff's physical strength. Rather, they noted that plaintiff could work only in situations free of "undue emotional stress and strain" and of "dust, fumes, and gasses" (tr. 12). These findings indicate plaintiff's difficulties are related to mental and environmental factors, not physical strength requirements. The sedentary work table therefore is not applicable to plaintiff's situation and should not have been relied on by the ALJ.

In reaching the conclusion that plaintiff was not disabled, the ALJ specifically disregarded Dr. Gracinin's opinion that plaintiff was totally disabled, holding that the doctor had exceeded his area of expertise (tr. 11). The ALJ was apparently adhering to a Social Security regulation which states,

The function of deciding whether or not an individual is under a disability is the responsibility of the Secretary. A statement by a physician that an individual is, or is not, 'disabled' . . . being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative

of the question of whether or not the individual is under a disability.

20 C.F.R. § 404.1526.

This regulation does not exactly comport with Sixth Circuit holdings. In *Walston v. Gardner*, 381 F.2d 580, 585 (6th Cir. 1967), the Court said,

> The Act vests in the Secretary the function of determining whether an applicant is statutorily 'disabled.' Physicians' statements to the effect that an applicant is unable to engage in substantial gainful employment are not binding on the Secretary. *However* where the expert medical opinions expressed by doctors who have examined and treated an applicant state that he is disabled[,] . . . a contrary finding by a hearing examiner is in the realm of speculation and reversible error in the absence of countervailing substantial evidence. (Emphasis added.)

■ In order for a physician's conclusion as to disability to have credence, however, it must be supported by "specific and complete clinical findings." *Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1973); *see LeMaster v. Weinberger*, 533 F.2d 337, 340 (6th Cir. 1976). If the physician's opinion is credible, then the Secretary must come forward with testimony from a medical expert who is "prepared to commit his professional opinion as to whether or not applicant is capable of working and as to what he can do." *Whitson v. Finch*, 437 F.2d 728, 732 (6th Cir. 1971). Anything less is not "substantial evidence." *Id.* In effect, a credible finding by a physician that a claimant is disabled is binding on the Secretary unless contrary medical opinion evidence is offered.

In this case plaintiff's treating physician, Dr. Gracinin, stated in his letter to plaintiff's attorney that plaintiff "was continually totally disabled since March 6, 1978 and was unable to engage in any substantial gainful activity for which he is qualified, based on his past education and experience" (tr. 112). This letter does not cite any specific findings, however the record discloses that Dr. Gracinin, who specializes in cardiology, reviewed the results of the Holter monitor scan (a sophisticated heart disease diagnosis device) (tr. 92) and examined plaintiff, checking his blood pressure several times (tr. 96). Dr. Gracinin concluded that plaintiff was suffering from "hypertensive arteriosclerotic heart disease with anginal syndrome" (tr. 95), *i. e.*, hypertension, hardening of the arteries, and a periodic fluttering heart beat. Dr. Gracinin also prescribed the various medications plaintiff used (tr. 96). It is fair to conclude that Dr. Gracinin's opinion as to disability was based upon specific and complete clinical findings.

We note, of course, that Dr. Gracinin indicated on the physical capacities evaluation form for plaintiff that plaintiff could perform sedentary work (tr. 106). The letter accompanying that form, however, fairly well indicates that Dr. Gracinin did not firmly believe that the indication was supported by his clinical findings (tr. 105).

The only medical evidence provided by the Secretary was the report of Dr. Grendel who stated that plaintiff had chest pain and concluded, "[s]uggest GXT if possible, if not impairment only slight" (tr. 98). GXT stands for "graduated exercise test," a means of checking for heart disease. Dr. Grendel's report is fairly cryptic. It does not make any statement as to disability, but by stating that the impairment was slight he implies there is no disability. This implication is undercut, however, by the suggestion of further testing. We cannot conclude that the report of Dr. Grendel amounts to a medical expert committing his professional opinion as to plaintiff's disability. His report makes no statement regarding plaintiff's work capabilities. On this ground alone, under Sixth Circuit precedents, his report does not amount to "substantial evidence" and does not contradict Dr. Gracinin's finding of disability. Thus the ALJ's conclusion of no disability "is in the realm of speculation and reversible error." *Walston v. Gardner*, 381 F.2d at 585.

For the reasons stated above, we hold that the Secretary's conclusion of no disability is not supported by substantial evidence. It is therefore reversed and this action is

remanded to the Secretary for award of benefits.

So ordered.