David SMIRGA, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

Civ. A. No. 83–1972.

United States District Court,
W.D. Pennsylvania.

April 30, 1985.

Robert N. Peirce, Pittsburgh, Pa., for plaintiff.

Albert W. Schollaert, Asst. U.S. Atty., Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

ROSENBERG, District Judge.

This matter is before me on an appeal from the Secretary of Health and Human Services and from the decision of the Administrative Law Judge dated November 30, 1982, and after the Appeals Council accepted the decision of the Secretary as final on June 6, 1983.

The administrative law judge in denying the plaintiff's claim for compensation found that the plaintiff, David Smirga, suffered from Fong's Syndrome and low back syndrome. He also found that although the plaintiff was not capable of performing his past relevant work which was of an unskilled nature and in the medium to heavy exertional level, the plaintiff could perform sedentary work, and therefore, he found that the plaintiff was not entitled to disability insurance benefits. The Appeals Council and the Secretary sustained the administrative law judge's decision.

The plaintiff was injured on January 9, 1979 after a fall down icy steps at his place of employment. From that time on he suffered variously and was hospitalized at Montefiore Hospital from May 14 to 17, 1980 for lumbar disc syndrome. The results of a lumbar myelogram were within normal limits.

Dr. Joseph Novak, a specialist in physical medicine, reported the plaintiff to be in obvious misery due to low back pain of unknown etiology with a limited range of motion and possibility of L5–S1 radiculopathy; that the lumbar lordosis was completely flattened; and that there was muscle spasm on both sides in the rectus spinae muscles. This was reported by Dr. Novak on October 10, 1980.

From November 16 to December 5, 1980, the plaintiff was hospitalized at St. Francis General Hospital, where a myelogram suggested Fong's Syndrome. A lumbosacral spine showed slight lumbar scoliosis with convexity to the right and small marginal osteophytes visible in the lumbar spine. X-rays showed a limited range of motion. Posterior iliac horns were visible bilaterally.

On December 12, 1980, Dr. Novak reported that the plaintiff had been evaluated in the rehabilitation center and it was his opinion that "the patient can only perform full-time light work with maximum of 10 pounds of lifting, carrying 10 pound articles from one place to another." He felt the plaintiff should receive a job where he could sit, stand and walk or move around at his discretion. He further stated that the plaintiff should not be required to climb, crawl or squat. Dr. Novak's recommendation did not preclude the plaintiff's performing sedentary work as indicated by the magistrate to whom the matter had been originally referred and within the provisions of 20 CFR § 404.1567(a).[1]

Dr. Novak again reported on June 8, 1981 that the plaintiff "should be encouraged to accept a light duty job and if one is available, that would be the best solution for this patient's problems", and advised the plaintiff there was nothing else he could do for him and he was discharging him from his care.

On January 24 to January 30, 1982, the plaintiff was hospitalized at the East Suburban Health System for lumbar myelogram which was interpreted as normal, but bilateral iliac horns were noted. He was again hospitalized at East Suburban from March 25 to March 30, 1982, where he underwent surgery for resection of the anterior horns from the right iliac wing due to his Fong's disease, by Dr. M.A. Tranovich, an orthopedic surgeon.

---

**1.** (a) Sedentary work. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools ... a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

On April 19, 1982, Dr. Bertrand Marlier, Jr. a neuro-surgeon, reported that his diagnosis was lumbar radiculities of undetermined etiology, and that the plaintiff had pain although he had no paravertebral muscle spasm.

On April 30, 1982, Dr. Roy S. Temeles, an orthopedic surgeon, reported that his examination revealed no paravertebral muscle spasm while moving about, and that X-rays from the Montefiore Hospital revealed "strange bony spurs on both ilia which had been labeled "Fong's Syndrome".

Dr. Temeles commented further that "he had never before heard of this syndrome and was unable to find a reference to it in his office library" and "... that he felt plaintiff had been made a medical invalid by his experiences with the medical profession rather than with any traumatic disease reportedly acquired". He also felt "plaintiff was capable of working in his former capacity without limitation". He felt "plaintiff's syndrome could be investigated while he was busy earning a living for himself and his family, as he did prior to the revelations of the Montefiore X-ray Department". Dr. Temeles also felt a label had been hung on this individual.

On May 20, 1982, Dr. Michael A. Tranovich, an orthopedic surgeon first saw the plaintiff when he was called as a consultant during the plaintiff's hospitalization with low back and iliac wing pain. He reported that the plaintiff "is a victim of a congenital anomaly known as Fong's Syndrome which is a very intrapatellar nail dysplasia. The consequence of this is that he had numerous abnormalities of joints of his body".

But Dr. Tranovich does not say that he took X-rays or made an X-ray examination, but that he had resected anterior horns from the right iliac wing due to his Fong's disease on March 25, 1982 and stated he felt it was reasonable to assume that the plaintiff would be disabled from his joint problems, but he would be able to perform sedentary work; and that the plaintiff had done fairly well from the surgery but it would certainly limit his ambulation in the future.

The evidence of all the doctors, except Dr. Roy S. Temeles, who it appeared made no examination of his own, indicated this young man is suffering from a hereditary disease. But not a single one of them explained to the administrative law judge what the disease was and whether or not it could be eradicated, or whether the spurs were constantly harvesting along the skeletal structure of this patient. All we do have is the evidence that Dr. Novak found the plaintiff was in obvious misery due to low back pain of *unknown etiology* with great reduction of the range of motion and possibility of L5–S1 radiculopathy, and that his "lumbar lordosis was completely flattened". And on January 8, 1981, Dr. Novak reported that "I advised him that there is nothing else I can do for him and the limitations which he has to follow are clearly outlined in my letter of December 12, 1980. I am discharging him from my care."

With due credit to the healing profession without whom society could not exist today, it is all the more surprising that the doctors in this case did not or could not present a clear picture of Fong's Syndrome or disease and of its present and future results because of its attacking the claimant.

The statements of Dr. Temeles raise serious doubts about the real condition of the plaintiff and whether or not the administrative law judge inquired sufficiently into the matter to make the decision upon which he basically denied the plaintiff any disability benefits.

I repeat verbatim what Dr. Temeles said (Tr. pg. 174):

"... If this is a syndrome related to a genetic inheritance then certainly a fall down a flight of stairs should have nothing to do with his present complaints. Thinking only in terms of this patient's trauma, he has been worked up by more than 1 capable physician in this city. None of these physicians have come forward with a suitable answer to this pa-

tient's continued complaint and disability. Personally, I believe this patient has been made a medical invalid by his experiences with the medical profession, rather than with any traumatic disease reportedly acquired.... I believe this patient's syndrome can be very handily investigated while he is busy earning a living for himself and his family as he did prior to the revelations of the Montefiore x-ray dept., who inadvertently hung a label on this individual."

Even Dr. Temeles admits the claimant was a "medical invalid".

Dr. Temeles' statement is the more remarkable when we consider, first, that he is an orthopod, and second, that his examination revealed "... no paravertebral muscle spasm, while moving about," and that X-rays from the Montefiore Hospital revealed "... strange bony spurs on both ilia as described and as labeled 'Fong's disease'." From what was stated by Dr. Temeles, his examination was visual and physical, and that he did not view the condition by the aid of X-rays. And this expert was not only surprised to learn that there was such a disease as "Fong's" but he seemed unconcerned about following it through, even for educational reasons after "Referring to my limited library in the office, I could find no reference to this syndrome.... I have never seen a reference to this problem." Under these circumstances, the administrative law judge should not have given weight to his medical opinion and conclusions.

The administrative law judge should have questioned his testimony as a matter of credibility because his main source of knowledge was that Fong's Syndrome has surfaced in the "revelations of the Montefiore x-ray dept. ...".[2]

Dr. Tranovich, an orthopedic surgeon, reported that the plaintiff "is a victim of congenital anomaly known as Fong's Syndrome which is a very intrapatellar nail dysplasia. The consequence of this is that he had numerous abnormalities of joints in his body."

■ For a physician's conclusion as to disability to have credence, it must be supported by specific and complete clinical findings. *Cummings v. Harris*, 513 F.Supp. 35 (D.C.Ohio, 1980). Such information was lacking in connection with this testimony.

There is specific relevant evidence which has been uncontradicted to the effect that the claimant is a victim of Fong's Syndrome.

■ While it would seem to some extent in this case that the doctors stated that the claimant might be able to perform certain employment, the evidence to that effect came from doctors who were not fully informed on Fong's Syndrome or disease and were speaking with a lack of medical knowledge, and thus, their evidence should not have been accepted as absolutely credible by the administrative law judge. And while it does appear that the administrative law judge relied upon and held that the claimant suffered from Fong's Syndrome, there was no other information before him upon which to make this determination. It may be said that the law judge principally relied upon medical opinions which were devoid of any reasoned analysis of why the claimant would be able to function more successfully in the future than he had in the past; thus the matter should be remanded to the Secretary for taking additional evidence. *Currier v. Secretary of Health, Education and Welfare*, 612 F.2d 594 (C.A.1, 1980).

A district court in reviewing the final decision of the Secretary must take into account whatever is in the record which detracts from the weight of the evidence presumably supporting the decision. *Johnson v. Califano*, 607 F.2d 1178 (C.A.6, 1979). The standard for reviewing the decision of the Secretary denying disability benefits under this chapter is whether there was substantial evidence to support

---

**2.** But the record does not have the "revelations of the Montefiore x-ray dept.", or of the St. Francis Hospital myelogram, both of which suggested "Fong's disease".

the decision of the Secretary. *Williams v. Secretary of Health, Education and Welfare,* 461 F.Supp. 596 (D.C.Tex., 1978). Substantiality of the evidence before the Secretary must be based upon the record as a whole. *Allen v. Califano,* 612 F.2d 139 (C.A.6, 1980).

Once a claimant establishes disability for his last employment role, he has made out a prima facie case of disability for purposes of this chapter. *Phillips v. Harris,* 488 F.Supp. 1161 (D.C.Va., 1980). If the administrative law judge does not have before him sufficient facts upon which to make an informed decision for disability benefits, his decision is not supported by substantial evidence. *McGee v. Weinberger,* 518 F.2d 330 (C.A.5, 1975).

The Act requires that the agency action be sustained if the decision is based on substantial evidence in the record, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Buzzeo v. Harris,* 486 F.Supp. 690 (D.C.N.Y., 1980).

The district court on appeal, such as here, will not try the claimant de novo, neither can it delegate its functions to carefully scrutinize the entire record in conducting the review. *Klug v. Weinberger,* 514 F.2d 423 (C.A.8, 1975).

■ Where there is conflicting evidence before an administrative law judge, it is for that officer to make a determination based upon credible evidence and the fact of what the medical evidence is so far as it relates to the true medical condition of the claimant; and such findings are conclusive on the issue of liability if they are supported by substantial evidence in the record. *Crowe v. Harris,* 489 F.Supp. 683 (D.C. Tenn., 1980); *Williamson v. Califano,* 487 F.Supp. 308 (D.C.Mo., 1980). But that is where there is conflicting evidence. In this case it was not a matter of conflicting evidence. It was a matter of evidence lacking in knowledge of a specific medical matter and of any explanations in connection therewith. So that any conclusions drawn by an administrative law judge must there-

fore have rested upon his own subjective judgment.

The medical testimony here, on the whole, while it is not complete, it is uncontroverted. Under these circumstances, the Secretary cannot arbitrarily choose to ignore this uncontroverted testimony that the claimant was or is suffering from Fong's Syndrome or disease. *Klug v. Weinberger, supra.*

There is no doubt about the claimant suffering pain and disability and that the pain would be a natural corolary from the spurs or horns as they may exist in his joints. Pain would by necessity be subjective in nature and difficult to evaluate. However, its application to the victim is a matter which should have been determined in the light of the character or characteristics of the individual. *Myers v. Secretary of Health and Human Services,* 602 F.Supp. 1142 (D.C.Pa., 1985).

All of this was not very revealing as evidence before an administrative law judge and it certainly is not revealing to a district judge on appeal. Accordingly, I attempted to find information from medical volumes. None of the medical books in our Circuit Library mention "Fong's Syndrome".

Inquiry was had of an expert in this field, through the courtesy of the University of Pittsburgh, Falk Health Science Library, with reference to the Illustrated Dictionary of Eponymic Syndrome and Diseases and their Syndromes. Osterreicher/Turner. Here in pertinent part is the statement that Fong's disease is hereditary; affects patella, nails and elbows, iliac horns and abnormality ridging. While this is described with other categorized syndromes, there is sufficient information which is reported to show that more revealing evidence can be elicited by the administrative law judge in order to arrive at an appropriate basic and just determination.

Congress expressed its intent to provide by the Social Security Act, with which we are here concerned, for those suffering ailments which deprive them of the ability to

be gainfully employed. It provided rules and regulations which are, more or less, commonplace. It delegated to the Secretary the duty of administering the Act and making factual determinations and conclusions within the guidelines set out in the statute. *Gardner v. Bishop*, 362 F.2d 917 (C.A.10, 1966). The hearing officer's decision must rest on legal rules and evidence adduced at the hearing. *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970). And once the plaintiff has presented sufficient evidence to show a likelihood for a basic claim, and inability to engage in his former job, the burden then shifts to the Secretary to show a lack of sufficiency in the plaintiff's claim and that the claimant is capable of performing some other kind of substantial work available in the economy as gainful employment. *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947).

■ Where evidence has been presented and the case is close as it involves the application of the Social Security Act, the balance should be cast in favor of, rather than against, coverage in order to fulfill the statute's broad and beneficient objects. *Schwing v. United States*, 165 F.2d 518 (C.A.3, 1948). While the burden is upon the plaintiff to demonstrate by medical evidence as well as by subjective evidence that he is unable to return to his former occupation, *Cotter v. Harris*, 642 F.2d 700 (C.A.3, 1981), reh. den. 650 F.2d 481; *Demandre v. Califano*, 591 F.2d 1088 (C.A.5, 1979), cert. den. 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323, it is sufficient only that he establish a prima facie case of his claim, and thereafter the burden shifts to the Secretary to show the opposite. *Daring v. Heckler*, 727 F.2d 64 (C.A.3, 1984); *Bloodsworth v. Heckler*, 703 F.2d 1233 (C.A.11, 1983); *Flood v. Schweiker*, 643 F.2d 1138 (C.A.5, 1981).

By expressing its intent, Congress was delegating the function of performance and fulfillment to the Secretary and judicial enforcement to the courts. But neither an Act of Congress nor any pronouncements or even dicta of the courts can substitute for facts which they, the Congress, seek remedially to legislate. And when a judicial agency charged with the ascertainment of facts fails to require elucidation of the facts, primarily medical, and accepts these in conclusionary fashion instead of requiring elaborations and knowledgeable and satisfying explanations to appropriately inform the inquiry agency, surmise replaces fact-finding and the congressional intentions become withered.

The record here shows evidence from quite a few medical doctors, none of them seem to be particularly informed on the subject of Fong's Syndrome, but only with reference to an X-ray from Montefiore Hospital that the plaintiff was suffering from the "enigmatic" Fong's disease.[3] With this set of medical facts, the administrative law judge could hardly be expected to be knowledgeable in making a conclusionary medical pronouncement on any sufferings of the plaintiff, as he did.

With due consideration of the fact that the burden is upon the plaintiff to satisfy the Secretary of the basic elements necessary for him to succeed in obtaining benefits, there was, however, sufficient evidence presented of a potentially valid claim by the plaintiff. So, too, the plaintiff's subjective evidence presented many questions concerning his condition, which should have been considered by the administrative law judge. And even though the plaintiff was represented by counsel, we are still reminded of the admonishment of Congress that the statute is intended to produce remedial benefits and is to be construed in favor of coverage, rather than denial, if at all possible. *Broussard v. Weinberger*, 499 F.2d 969 (C.A.5, 1974); *Denlo v. Celebreeze*, 347 F.2d 159 (C.A.9, 1965); *St. Luke's Hospital Assoc. v. United States*, 333 F.2d 157 (C.A.6, 1964).

---

**3.** Doctors mentioned Fong's disease nine times in the record. Presumably, all related to the Montefiore Hospital as reference. It would have served justice better to have made that a part of the record.

The plaintiff testified throughout his evidence that he was suffering from severe pain in his spine and right hip; that he had problems with his knees and elbows; that the pain in his lower back and right hip was the result of injuries received in a fall in January, 1979; that he would stand, lie down or walk for limited periods of time; that he could drive his automobile for a half hour; that he took a variety of drugs, such as percodan, valium, tylenol, codeine, zomas, feldene, valmane and motrin; and that he had a limited amount of therapy with a traction machine and a whirlpool in his home.

This evidence sufficiently presented a claim before the administrative law judge, and it is sufficiently lined up with the hereditary disease, Fong's Syndrome, which the administrative law judge found to be the affliction of the claimant. So, while there must be medical evidence of physical and mental impairment in order to establish a disability, disregard of a claimant's subjective complaint of pain is not justified solely because of the inadequacy of medical experts to familiarize the administrative law judge with the seriousness of Fong's Syndrome or disease. *Northcutt v. Califano,* 581 F.2d 164 (C.A.8, 1978).

And since the plaintiff was afflicted with Fong's Syndrome, the fact that he fell down icy steps on January 9, 1979, after which time he suffered variously and was confined to Montefiore Hospital for lumbar disc syndrome, the injury received on January 9th was not very likely to have been the cause of Fong's Syndrome. Yet the fall might have either awakened or aggravated it. This reasoning seems to be common sense; a knowing-medical expert, alone, can testify to its validity. This was lacking in this case.

So, too, there is lacking any knowing, medical expert evidence concerning the character, quantity and intensity of pain which this claimant may have suffered as such would affect his ability to perform gainful employment, as a sufferer of Fong's disease. None of the doctors specifically explained the relationship of Fong's Syndrome with the plaintiff so as to

show it as an impairment which is essential to the establishment of a disability as a medically determinable physical impairment which could be expected to result in death, or which has lasted or could be expected to last for a continuous period of not less than twelve months. *Byrd v. Richardson,* 362 F.Supp. 957 (D.C.S.C., 1973), and that the impairment caused an inability to engage in any substantial gainful employment.

Since the administrative law judge found the plaintiff suffered from Fong's disease, it became the burden of the Secretary to show that it had no vitality in the case of the claimant, or was as it related to him, of such mild or ineffectual significance in its relationship to the claimant, as to be only partially rsponsible for his condition or inability to perform gainful employment.

"The administrative factfinder must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant". *Northcutt v. Califano, supra,* 581 F.2d at 166. If the administrative law judge does not give proper evaluation to all the claimant's evidence because of the lack of knowledge on the part of medical experts and thus produced an erroneous view of the law because it held that the claimant proved that the pain resulted as a direct consequence of his physical impact, then the claimant has not been given a full and fair hearing as required by law. *Northcutt v. Califano, supra.*

Here, the claimant establishes even if indirectly that he suffered from Fong's Syndrome or disease, and that he is afflicted by bony spurs, or horns, or extrusions in various vital skeletal parts of his body which are necessary in action supporting human endeavors and has subjectively shown his sufferings and difficulty of performing activities necessarily required for gainful employment, and nexus has been established between Fong's Syndrome or disease and the plaintiff's condition.

Because of the anomaly that a condition such as Fong's Syndrome exists, and because there is evidence to the effect that the plaintiff was afflicted by it and gave

abundant evidence of his pain, suffering and restricted abilities, it would appear that any judicial finding must necessarily rely upon the patient's history and his subjective complaints; and further, that the Secretary must give consideration to the subjective complaints even though they are not necessarily corroborated by objective findings. To fail to do so is error. *Brand v. Secretary of Department of Health, etc.,* 623 F.2d 523, 526 (C.A.8, 1980).

Thus, the plaintiff has established a sufficient case for the consideration of the Secretary to grant compensation. But it still leaves many questions for consideration by the Secretary to ascertain now that she knows Fong's Syndrome exists; that it is a hereditary disease; that it is a painful disease and that it may be progressive, and that all this can be a solid basis upon which her conclusion can and should rest in the case of the plaintiff.

The Secretary has a broad source upon which to base a determination in disability benefit cases and the determination must be based upon more than simple weighing of objective medical evidence. Subjective complaints and descriptions of symptomology must be considered and evaluated. *Deyo v. Weinberger,* 406 F.Supp. 968 (D.C. N.Y., 1975).

While it is not the function of this court to instruct the Secretary of Health and Human Services on how to perform her duties, the obligations of justice to which a court is bound require at least that it make helpful suggestions or directions where justice will be advanced.

Accordingly, the report and recommendation of the magistrate will not be accepted, and this matter will be remanded to the Secretary of Health and Human Services for the purpose of further inquiry into both the subjective and objective aspects of the plaintiff's condition; and further, to ascertain what the plaintiff's condition is and of his capability to perform gainful employment.

ORDER OF COURT

AND NOW, TO-WIT, this 30th day of April 1985, for the reasons set forth in the foregoing Opinion, this matter is hereby remanded to the Secretary of Health and Human Services for further inquiry into the subjective and objective aspects of the plaintiff's condition, to ascertain what the plaintiff's condition is and the attributable cause and the capability of the plaintiff in performing gainful employment.